UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

David Martorelli,
  *Plaintiff,*                                    Civil No. 3:10cv236 (JBA)

      *v.*

Jeffrey W. Cossette,
      *Defendant.*                                March 30, 2012

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff David Martorelli has brought this lawsuit against Defendant Jeffrey W. Cossette, Chief of Police of the City of Meriden, in both his individual and official capacities. Plaintiff alleges that Defendant's actions deprived Plaintiff of property, his pawnbroker license, without due process of law; that Defendant carried out this deprivation in such an "outrageously arbitrary" manner so as to deprive Plaintiff of substantive due process of law; and that Defendant has violated Plaintiff's right to equal protection of the laws, all in violation of the Fourteenth Amendment. Defendant moves [Doc. # 34] for summary judgment on all of Plaintiff's claims,[1] and Plaintiff opposes [Doc. # 39] this motion, claiming that there is a genuine dispute between the parties regarding certain material facts. For the following reasons, Defendant's motion will be granted.

I.      Factual Background

Beginning in 2001, Plaintiff owned and operated the New Cook Avenue Pawnshop in Meriden, Connecticut. (Pl.'s Dep., Ex. 1 to Pl.'s Loc. R. 56(a)2 Stmt [Doc. # 38] at 31.)

---

[1] In Defendant's Memorandum in Support of his motion for summary judgment, he asserts the defense of governmental immunity under Conn. Gen. Stat. § 52-557n(b)(7). However, at oral argument Defendant conceded that Connecticut statutory governmental immunity was inapposite here. Thus, this argument is deemed withdrawn.

Several years later, Plaintiff purchased the building in which the pawnshop was located. (Pl.'s Dep. at 16–17.) On June 3, 2009, Plaintiff and several of his employees were arrested following an undercover investigation of the New Cook Avenue Pawnshop conducted by a task force of various Connecticut law enforcement agencies, in which an undercover police officer sold a pallet of power tools represented to be stolen to Plaintiff's clerk.[2] (Investigation Report, Ex. A to Def.'s 56(a)1 Stmt. [Doc. # 36] at 1–3.)  As a result of this investigation, Plaintiff was arrested on charges of felony larceny, conspiracy to commit larceny, and receiving stolen property. (Pl.'s Dep., Ex. H to Def.'s 56(a)1 Stmt. at 23:21–24:5.)  Two employees of Julie's Pawn (also known as "J.B.'s Pawn"), a neighboring pawnshop also located in the City of Meriden, were also arrested by the task force in a similar investigation. (*Id.* at 38:7–38:11.) The owner of Julie's Pawn was not arrested. (*Id.* at 38:12–38:13.)

On June 25, 2009, while the charges were pending, Plaintiff applied for a renewal of his pawnshop and precious metals licenses, and received a receipt that stated "this license may be revoked as provided by city by–laws" and designated a license period running from June 28, 2009 to June 28, 2010. (License Application Receipt, Ex. G to Def.'s 56(a)1 Stmt. at 1–2.) On September 16, 2009, Plaintiff received a letter from Defendant that a "Due Process Hearing" was scheduled for October 1, 2009, at which Plaintiff's "suitability to operate as a pawn broker/precious metal dealer within the City of Meriden" would be determined. (Sept. 16, 2009 Ltr From Cossette to Martorelli, Ex. C to Def.'s 56(a)1 Stmt. at 1.) At the "Due Process Hearing" presided over by Defendant, both Plaintiff and his attorney argued

---

[2] According to the investigation report, Plaintiff's clerk was told on the date of the sale that these power tools "fell off a truck," an expression which is "commonly used by person(s) who are involved in the buying or selling of stolen merchandise to hide the fact that the merchandise is stolen." (*See* Ex. A at 2.)

Plaintiff's suitability to continue to operate as a pawn broker, making the following arguments: (1) Plaintiff was innocent until proven guilty; (2) Plaintiff had not been convicted of a crime; (3) the criminal investigators on the task force had misrepresented facts to Defendant; (4) Plaintiff had been a law–abiding pawn shop operator for eight years; (5) Plaintiff documented all business transactions and provided weekly reports to the police department; (6) Plaintiff had always cooperated fully with police, and "had an open–door policy" with the police; (7) Plaintiff had worked with other police departments by purchasing stolen goods at their direction to aid investigations; (8) local businesspeople, police, and politicians provided character references for Plaintiff; (9) Plaintiff was undergoing expensive treatments for multiple sclerosis, and needed medical insurance; and (10) it was common knowledge that anyone was able to buy pallets of merchandise from stores such as Home Depot and Lowes. (Cossette Aff. ¶ 9; Pl.'s Dep. at 31:5–32:23.)

After the hearing, Defendant concluded that Plaintiff's arguments "rang[ed] from what I found to be unpersuasive to frivolous in light of the evidence underlying his pending criminal charges" (Cossette Aff. ¶ 8), and notified Plaintiff that "[n]othing that you or your attorney had to offer in your defense convinced me that you were not engaging in a fencing operation" (Oct. 22, 2009 Ltr from Cossette to Martorelli at 2). Defendant found by on a preponderance of the evidence that Plaintiff was "unsuitable" to operate as a pawn broker. (*Id.*) As a result, Defendant informed Plaintiff that "[e]ffective immediately, your license to operate in the capacity of a Pawnbroker and/or Precious Metals dealer is hereby revoked." (*Id.*) Plaintiff did not appeal Defendant's determination, as there was no mechanism for appeal. (*See* Pl.'s Dep. 34:13–34:20.)

Plaintiff then attempted to sell the New Cook Avenue Pawnshop to Brim Enterprises, owned by his friend, Brian Dickson. (Pl.'s Dep. at 38:14–38:25.) Dickson was a Connecticut corrections officer and did not own any businesses at the time. (*Id.* at 39:16–40:1.) Mr. Dickson applied for a precious metals permit and pawnbroker's license, and included either his and Plaintiff's sales and tax numbers, or only Plaintiff's. *(Id.* at 43:5–45:1.) In either case, Defendant denied Dickson's application because use of Plaintiff's sales and tax numbers, led Defendant to believe that "[Dickson] was simply trying to perpetuate the plaintiff's operation." (Cossette Aff. ¶ 16.) Plaintiff's girlfriend Cindy Kenealy's application for a pawnshop license using Plaintiff's sales and use tax number was also denied. (Cossette Aff. ¶¶ 17, 18; Pl's Dep. at 47:25–48:01). At his deposition, Plaintiff was vague about the terms and could not give a "ballpark" figure for selling the business to Mr. Dickson, and said the terms of any sale to Ms. Kenealy would have been "personal." (Pl.'s Dep. at 39:1–39:11, 49:14–49:19, 46:5–46:8.)

Plaintiff had a verbal agreement with another friend, Mike Cozzolino, to purchase the New Cook Avenue Pawnshop, which also fell through because Mr. Cozzolino was told by the police department that if Plaintiff was seen in the building in which the pawnshop was located, Mr. Cozzolino's license would be revoked. (Pl.'s Dep. at 46:1–46:1, 46:10–46:19.) Defendant states that he told Mr. Cozzolino his license application would be granted so long as Plaintiff did not operate the pawn shop. (Cossette Aff. ¶ 21.)

Plaintiff also believes that a retired officer named "Pete," from Southington, CT, was also interested in purchasing the pawnshop. (*Id.* at 46:24–47:2.)  Plaintiff did not know if "Pete" had actually applied for  pawnbroker and precious metals licenses, but believes that Defendant had refused to meet with "Pete" for eight months. (*See id.* at 47:3–47:20.)

Plaintiff maintains he gave to Defendant the "slips" or forms that the undercover officer signed certifying that the goods Plaintiff purchased were not stolen, and Defendant lied and said he had never received them. (Pl.'s Dep. at 28:10–30:17.) Plaintiff's suspicion that Defendant's decision to revoke or not renew his pawnbroker license was influenced by both the City Manager and Mayor of Meriden lack any evidence. (*Id.* at 57:14–58:3.)

Plaintiff claims that these facts could support a reasonable inference that Defendant has deprived Plaintiff of his property without due process of law; that Defendant engaged in outrageously arbitrary actions which have deprived Plaintiff of substantive due process of law; and that Defendant deprived Plaintiff of equal protection of the law by treating him differently than other similarly–situated persons. (Pl.'s Compl. [Doc. # 1] ¶ 15.)

II.     Discussion[3]

A.     Procedural Due Process Claim

Defendant argues that Plaintiff had no constitutionally protected property interest in either keeping or renewing his pawnbroker's license, or in the alternative, that Plaintiff received all the process he was due. Plaintiff claims that once a pawnbroker license had been granted in accordance with section 21-40 of the Connecticut General Statutes, he had a constitutionally protected property interest in the license, and it could not be revoked except

---

[3] "Summary judgment is appropriate where, construing all evidence in the light most favorable to the non-moving party," *Pabon v. Wright*, 459 F.3d 241, 247 (2d Cir. 2006), "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(c)(2). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

for cause. Plaintiff also claims that the hearing he was afforded prior to the revocation of his license was constitutionally inadequate.

### 1. Whether Plaintiff Has a Constitutionally Protected Property Interest in His License

"Property interests are created, and their dimensions defined, by state law." *RR Village Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1201 (2d Cir. 1987) (citing *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)). "A state–created entitlement that cannot properly be eliminated except for cause is a property right of which the holder may not be deprived without procedural due process. *Id.* (citing *Memphis Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978)). However, "if state law makes the pertinent official action discretionary, one's interest in a favorable decision does not rise to the level of a property right entitled to procedural due process protection." *Id.* at 1202 (citing *Schwartz v. Mayor's Comm. on the Judiciary of the City of New York*, 816 F.2d 54, 56 (1987); *Sullivan v. Town of Salem*, 805 F.2d 81, 84 (2d Cir. 1986)).

Prior to the 2011 amendments, Connecticut General Statute § 21-40 stated, in relevant part: "the chief of police of any city may grant licenses to suitable persons to be pawnbrokers . . . and may revoke such licenses for cause; . . . Each license . . . shall continue one year unless sooner revoked."[4] While applicants for pawnbroker licenses may have no

---

[4] As amended in February 2011, the statute now provides:
(a) The licensing authority of any town or city may grant licenses to suitable persons to be pawnbrokers in such town or city respectively, and may suspend or revoke such licenses for cause, which shall include, but not be limited to, failure to comply with any requirements for licensure specified by the licensing authority at the time of issuance. . . .

(g) The licensing authority may suspend, revoke or modify any license issued

constitutionally protected property interest in actually being issued a license, *see Aurilio v. Sweeney*, No. CV 980357150S, 1999 WL 171414 at *4 (Conn. Super. Mar. 11, 1999) (*aff'd*, 761 A.2d 801 (Conn. App. Ct. 2000)), once a license is granted, the license–holder is entitled to procedural due process if revocation of it is sought *prior* to its natural expiration date of one year. *See  Kuck v. Danaher*, 600 F.3d 159, 165 (2d Cir. 2010) ("[P]ermit renewal applicants are entitled to basic due process protections, including a meaningful opportunity to be heard after a denial or revocation."); *Spinelli v. City of New York*, 579 F.3d 160,169 (2d Cir. 2009) ("[W]hile a person does not have a protected interest in a possible future business license, the situation changes once the license is obtained.").

Because the parties do not dispute that Mr. Martorelli has an unexpired pawnbroker license at the time it was revoked, (*see* Ex. E to Def.'s 56(a)1 Stmt), he had an protected property interest in his license to invoke Due Process protections. The question that remains is whether the process that he received was constitutionally adequate.

### 2.    *Constitutional Adequacy of the Due Process Hearing*

Defendant asserts that Plaintiff received all the process that was due to him, as he was given a pre–revocation "Due Process Hearing" with prior notice, and an opportunity to be

---

under this section at any time during the period of the license for good cause shown, upon notice to the licensee and following a hearing. The licensing authority shall hold any such hearing not later than five days after the date of issuance of such notice, and shall issue a decision not more than fourteen days after any hearing. Any person aggrieved by any action of the licensing authority in denying, suspending, revoking, modifying or refusing to renew a license issued pursuant to this section may appeal from such action to the Superior Court.

Conn. Gen. Stat. § 21-40 (2011).

meaningfully heard at a meaningful time. Plaintiff claims that the procedural safeguards employed at the hearing resulted in an "enormous" erroneous deprivation, and he was given no opportunity to confront and cross–examine his accusers, or to appeal the judgment of Defendant.

"The touchstone of due process . . . is 'the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Spinelli*, 579 F.3d at 169 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976)); *see also Joint Anti–Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring) ("The right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society."). However, due process "'is not a technical conception with a fixed content unrelated to time, place, and circumstances.'" *Mathews*, 424 U.S. at 334 (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)). Instead, "'[d]ue process is flexible and calls for such procedural protections as the particular situation demands.'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Confronted with the 'flexible' nature of due process, the Supreme Court held in *Mathews* that the procedural protections required in a given situation are to be determined by weighing three factors:

> "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.*

At oral argument, Defendant claimed that the purpose of Conn. Gen. Stat. § 20-40 is "to ensure or to protect the general welfare from people that are dangerous to the public welfare, i.e., people who are selling stolen goods," and that it was important that the Chief of Police be able to make discretionary decisions quickly in order to protect "the general welfare." In *Spinelli*, the Second Circuit found that the "'exigent' circumstances necessitating 'very prompt action' on the part of the City were sufficient to justify the City's failure to provide Spinelli with pre–deprivation notice or a hearing" before her gun dealer license and firearms were taken, 579 F.3d at 170, but that she was entitled to a "prompt post–deprivation hearing." *Id.* at 175.

While there is arguably a difference between the public welfare exigencies of revoking a firearms dealer's license because of inadequate security at the firearms dealership[5] and revoking a pawnbroker's license used to fence stolen goods, Plaintiff, unlike Ms. Spinelli, was given full notice of the hearing to determine his "suitability" to maintain a pawn shop license (*see* Cossette Aff. ¶ 7), and he was given the opportunity to be heard "at a meaningful time and in a meaningful manner," *Mathews*, 424 U.S. at 902, in that he was represented by counsel and had the opportunity to present his "side of the story," all *before* his pawnbroker license was revoked. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.").

---

[5] The Second Circuit noted, "[w]ere we to conclude that prompt action was not required, we would tie the hands of police faced with obvious security lapses at gun stores until a hearing could be held, and thereby 'substantially undermine the state interest in public safety.'" *Spinelli*, 579 F.3d at 171 (quoting *Mackey v. Montrym*, 443 U.S. 1, 18 (1979)).

Although Plaintiff claims that his pre–deprivation process was inadequate because he was not permitted to cross–examine adverse witnesses or to present his own witnesses, he has cited to no cases in which a similar property deprivation required the right to cross–examine. Further, Plaintiff has put forward no evidence to support his argument that cross–examination would have made any difference in the Defendant's decision to revoke his license, and thus has not shown that the "risk of erroneous deprivation" requires more process than what he received, that is, a hearing at which he was represented by counsel and could present his own evidence on his suitability to maintain a pawn shop. *See Loudermill*, 470 U.S. at 543 n.8 ("[W]here there is an entitlement, a prior hearing facilitates the consideration of whether a permissible course of action is also an appropriate one. This is one way in which providing "effective notice and informal hearing permitting the [employee] to give his version of the events will provide a meaningful hedge against erroneous action."). As the Court concludes that Mr. Martorelli has received all of the process which he was due prior to the revocation of his license, summary judgment will be granted on this claim.

B.      Substantive Due Process Claim

Defendant also moves for summary judgment on Plaintiff's substantive due process claim, arguing that there are no allegations in the Complaint specific to substantive due process, and that the conduct alleged does not rise to the level of actionable conduct.

10

### 1.   Duplicativeness Argument

As this Court has previously held, when a plaintiff brings a substantive due process claim in conjunction with other constitutional claims against a defendant, the substantive due process claim must raise allegations beyond those encompassed by his or her other constitutional causes of action. *See Saltarella v. Town of Enfield*, 427 F. Supp. 2d 62, 75 (2006) (*aff'd*, 227 F. App'x 67 (2d Cir. 2007)).

Here, viewing the record in the light most favorable to Plaintiff, the Plaintiff has alleged facts that go beyond the allegations of his equal protection and procedural due process claims: specifically, his allegations that Defendant unjustifiably denied the applications for pawnbroker licenses of potential purchasers of Plaintiff's business after the revocation of Plaintiff's license so that he could not sell his business. (*See* Compl. ¶¶ 11, 12, 13.) Summary judgment is thus not warranted on this basis.

### 2.   Substantive Due Process Standard

"Substantive due process is an outer limit on the legitimacy of governmental action." *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999). In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only deprivation of a constitutionally cognizable property right by government action, but also that the government action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). Substantive due process does not protect against government action that is merely "incorrect or ill–advised," *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994), and "substantive due process standards are violated only by conduct that is so outrageously

arbitrary as to constitute a gross abuse of governmental authority." *Natale*, 170 F.3d at 262 (2d Cir. 1999).

Here, drawing all reasonable inferences in favor of Plaintiff, the record shows that Plaintiff was unable to sell his business because Defendant refused to grant permit applications to the individuals interested in purchasing the Cook Avenue Pawnshop from Plaintiff.[6] Defendant apparently concluded that one of the individuals, Mr. Cozzolino, was a suitable individual for a pawnbroker license, but Defendant wished to be certain that Plaintiff would not be employed by Mr. Cozzolino,[7] and therefore denied Mr. Cozzolino's application. Even if Cozzolino would otherwise be considered a "suitable" person for purposes of Conn. Gen. Stat. § 21-40, if Defendant denied Mr. Cozzolino's license purposefully because of suspicion that Cozzolino would employ the Plaintiff, this action does not rise to the level of an "exercise of [governmental] power without any reasonable justification in the service of a legitimate governmental objective." *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (quoting *Sacramento*, 523 U.S. at 845–46).

The factual record does not support the shocks–the–conscience standard for substantive due process violations, and the Court therefore grants Defendant's motion for summary judgment.

---

[6] Of the three applicants, "Pete," of an unknown last name, never applied for a pawnbroker's license, and Brim Enterprises and Ms. Kenealy both initially used Plaintiff's sales and tax identification number, which caused Defendant to believe that they were both "trying to perpetuate the plaintiff's operation." (*See* Cossette Aff. ¶¶ 16, 19.) Because of that, the only real issue would be with respect to Defendant's denial of a permit to Mr. Cozzolino.

[7] Defendant stated in his affidavit that he told Mr. Cozzolino that he would grant his license application "so long as Mr. Martorelli was not operating the pawnshop." (Cossette Aff. ¶ 21.) Plaintiff also claims that Mr. Cozzolino was told that his license would be revoked if Plaintiff was "seen in that building." (Pl.'s Dep. at 46:11.)

C.    "Class of One" Equal Protection Claim

Defendant also argues that summary judgment should be granted on Plaintiff's "class of one" equal protection claim, as there is no evidence of disparate treatment or discriminatory intent on the part of the Defendant, and a rational basis supported Defendant's actions. In opposition, Plaintiff argues that his business was treated differently from Julie's Pawn, another pawnshop within the City of Meriden.

"The Supreme Court has 'recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58 (2d Cir. 2010) (*cert. denied*, 131 S. Ct. 824 (2010)) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).  Within the Second Circuit, "'[c]lass–of–one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'" *Id.* at 59 (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). "'[T]he standard for determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are *prima facie* identical.'" *Id.* (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005) (internal quotation marks omitted), *overruled on other grounds*, *Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008)). Accordingly, to succeed on a class–of–one claim, a plaintiff must establish that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the

> similarity in circumstances and difference in treatment are sufficient to
> exclude the possibility that the defendants acted on the basis of a mistake.[8]

*Id.* at 59–60 (quoting *Clubside,* 468 F.3d at 159 (internal quotation marks omitted)).

Here, all of Plaintiff's proposed comparators differ from him in material respects. In his deposition, Plaintiff identified five pawnshops that did not have their licenses revoked after being targeted by the same task force that arrested him. Defendant had licensing authority pursuant to section 21-40 over only one of these establishments, Julie's Pawn. (*See* Pl.'s Dep. at 36:1–36:23, 38:5–38:10.) Although both the manager and an employee of Julie's Pawn were arrested by the same task force that targeted Plaintiff, the owner of Julie's Pawn was not arrested (*id.* at 38:7–38:13), and Defendant "did not believe [he] had a legal or factual basis to revoke the license for J.B.'s [Julie's] Pawn as the owner was not arrested" (Cossette Aff. ¶ 14). Plaintiff, the holder of the pawnbroker license for New Cook Pawnshop was arrested, and the owner (and presumably the holder of the pawnbroker license) of Julie's Pawn was not. Further, the decision to arrest Plaintiff, and not the owner of Julie's Pawn, cannot be attributed to Defendant, as there is no evidence that either he or any member of his police department were involved with the task force that conducted the operation which led to Plaintiff's arrest. (*See* Investigation Report at 1.) Accordingly, Plaintiff and the owner

---

[8] The Second Circuit also noted in *Ruston* that there may now be a third requirement to succeeding on "class of one" equal protection claims: "The Supreme Court arguably added a third requirement to 'class of one' claims in *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008): that the offending governmental action at issue be non–discretionary." *Ruston*, 610 F.3d at 58 n.3. Judge Bryant applied this third "non–discretionary" requirement to a case in which the plaintiff claimed he was treated differently from other similarly–situated individuals by being arrested. *See Faulks v. City of Hartford*, No. 3:08–cv–270 (VLB) 2010 WL 259076 at *6–*8 (D. Conn. Jan. 19, 2010) (Bryant, J.).

of Julie's Pawn are not sufficiently similarly situated to permit Plaintiff to succeed on his "class of one" equal protection claim, and summary judgment will enter for Defendant.

III.    Conclusion

For the reasons discussed above, Defendant's Motion [Doc. # 34] for Summary Judgment is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of March, 2012.

15